**The below described is SIGNED.**

Dated: September 30, 2010

**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>LLENNOC REAL ESTATE, LLC,<br><br>Debtor. | Bankruptcy No. 06-21157<br><br>Chapter 11<br><br>Judge R. Kimball Mosier |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW RESPECTING BANK OF THE WEST'S OBJECTION TO CLAIM OF JED CONNELL AND ORDER ALLOWING CLAIM**

An evidentiary hearing on Bank of the West's Objection to Claim of Jed Connell was held March 16, 2010. Alan L. Smith appeared on behalf of Jed Connell (Connell). Kim R. Wilson appeared for Bank of the West (Bank). Kenneth Cannon appeared for Duane Gillman, the trustee in this case (Trustee). Evidence was presented and argument was held. The Court also afforded the parties an opportunity to make post-trial submissions to the Court. Being thus duly advised in the premises, the Court allows the claim of Jed Connell as an unsecured claim in the amount of $160,151.00. In support of this allowance of claim, the Court enters the following findings of fact and conclusions of law. The Court's findings of fact implicitly may contain conclusions of law and, conversely, the Court's conclusions of law implicitly may contain findings of fact.

## FINDINGS OF FACT

1. On or about January 14, 2003, Llennoc Real Estate, LLC, (Debtor) was organized as a limited liability company under the laws of the state of Utah.[1]

2. The Debtor's business was the organizing, financing, constructing, and operating of a family recreation and entertainment center in a 52,000 square foot facility which included a bowling alley, climbing gym, ice cream parlor, restaurant, banquet center and video arcade.[2]

3. Connell was a pre-petition manager for the Debtor.

4. During the pre-formation existence of the Debtor's business, or from approximately December 2001 through January 14, 2003, Connell, performed services for the Debtor. Connell continued to perform services for the Debtor from the date of its official formation through shortly after the petition date, at which time his employment terminated as his position in the company was displaced by the Trustee.[3]

5. During this period, Connell had primary, if not exclusive, management responsibility for the Debtor's entire business, including making arrangements for financing, obtaining all regulatory approvals with local units of government, handling all personnel, supervising all accounting functions, and managing operations of the recreation and entertainment facility.[4]

---

[1]  Resp. to Objection to Claim Tr. 8 [hereinafter Tr.], Dkt. #521; Trial Ex. C.

[2]  Tr. 20–21.

[3]  Tr. 17–18, 75–76, 100–101; Trial Ex. 9 & C.

[4]  Tr. 18–20.

6.   The Court takes judicial notice of the Disclosure Statement filed as Docket Entry No. 305 at page 3 of 23 which discloses the owners of Debtor and that Connell and Mark Connell are managers.

7.   Connell's employment by Debtor is evidenced by a Management and Compensation Agreement dated September 7, 2004 (Agreement).[5]

8.   The Agreement was signed by Connell in his individual capacity.

9.   The only other signatures on the document were those of Connell's now deceased parents, Edward J. Connell and Faye J. Connell.

10.  Connell testified that both parents signed the Agreement in their representative capacities as managers of the Debtor.[6]

11.  Edward J. Connell's signature, however appears on the Agreement as an individual and without any reference to any office, title, or legal capacity on behalf of either the Debtor or Llennoc Enterprises, LLC, (Llennoc) even though the Debtor and Llennoc were fully registered entities on September 7, 2004.

12.  Faye J. Connell's signature also appears on the Agreement only as an individual and without any reference to any office, title, or legal capacity on behalf of either the Debtor or Llennoc.

13.  Neither Edward J. Connell nor Faye J. Connell could have testified that they signed the Agreement in any capacity other than as individuals.

---

[5]   Trial Ex. 9.

[6]   Tr. 85.

14.     Connell provided no documentary evidence to establish that Edward J. Connell or Faye J. Connell had any legal capacity to sign for either the Debtor or Llennoc on September 7, 2004.

15.     On or about April 10, 2006, the Debtor filed its petition for relief under chapter 11[7] of title 11 of the United States Code, commencing this case.

16.     Connell submitted a claim to the Debtor's estate for unpaid salary and fees and unreimbursed expenses (Claim).  This Claim was also listed on the Debtor's schedule G as an executory contract and as undisputed, non-contingent, and liquidated pursuant to § 1111(a).  Hence, the claim was deemed filed pursuant to § 501.

17.     The Claim was identified and itemized in the "Amended Exhibit C to Disclosure Statement Related to Modified and Restated Amended Plan of Reorganization of Trustee Dated October 22, 2007."

18.     The Trustee did not object to the Claim.  The Bank, a secured creditor and party in interest, filed an objection to the Claim.

19.     Connell's Claim against the Debtor, in part, includes a request for the reimbursement of expenses in the amount of $7,855.00, advanced by Connell.  Connell testified that:  (a) the Debtor had agreed with its members that, when members advanced personal funds for business expenses, those out of pocket advances would be reimbursed;[8] (b) Connell had advanced personal funds in the amount of $7,855.00 in this regard;[9] (c) these expenses were

---

[7]     All statutory references are contained in title 11 of the United States Code unless otherwise identified.

[8]     Tr. 24.

[9]     Tr. 24, 32–33; Trial Ex. 8.

4

incurred during the ordinary course of the Debtor's business;[10] (d) none of the vendors associated with these costs were affiliated with Connell;[11] (e) the costs were all the product of arm's length bargaining;[12] (f) all of the items for which reimbursement is claimed were documented through invoices and receipts which had been submitted to the Debtor's accounting department prepetition;[13] and (g) this documentation had been turned over and made available to the Trustee.[14]

20.     Connell claims an additional $2,296.00 as unreimbursed expenses on behalf of Debtor's business. Connell advanced personal funds to purchase tables and chairs that were used in the banquet and conference center at the Debtor's facility.[15] These tables and chairs were used in the Debtor's business.[16]

21.     The Debtor did not reimburse Connell for this amount.[17]

22.     Connell claims an additional $150,000.00 pursuant to the Agreement with the Debtor. The terms of the Agreement stated that when Connell had laid the groundwork so that the recreation and entertainment center was ready to find construction financing, he would get

---

[10]   Tr. 25.

[11]   Tr. 25.

[12]   Tr. 25–26.

[13]   Tr. 24–25, 32–35.

[14]   Tr. 27–32.

[15]   Tr. 36–37.

[16]   Tr. 38.

[17]   Tr. 37–38.

$50,000; when he had completed arrangements for and obtained financing, he would get another $50,000; and when the center opened, he would get another $50,000.[18]

23.     Connell expended considerable time and effort and, eventually, fulfilled each of these three conditions.[19]

24.     The last of the conditions, the opening of the recreation and entertainment center, occurred in April 2005, or at least no later than the fall of 2005, approximately 6 months prior to the filing of the petition in this case.[20]

## CONCLUSIONS

The Bank objects to Connell's claim for reimbursement of expenses on the grounds that they were incurred prior to formation of the Debtor in January 2003.  The evidence, as noted above, is uncontradicted that all of the expenses which are itemized in Trial Exhibit 8 were incurred for the benefit of the Debtor's business whether that business was being conducted pre-formation or post-formation.  The evidence also is uncontradicted that the Debtor verbally agreed with Connell and other members that, to the extent they expended personal funds for business expenses, those expenses would be reimbursed—regardless of when they were incurred.  The Agreement between Connell and the Debtor was made post-formation, in September 2004, and it both confirms and ratifies the earlier, verbal understanding of the parties concerning reimbursement of expenses.  The fact that the Debtor incurred this obligation to Connell and other members of the Debtor before official formation of the Debtor as a limited

---

[18]     Tr. 41–42.

[19]     Tr. 42–46.

[20]     Tr. 46, 88–90.

liability company in the state of Utah, without more, "may not be interpreted to invalidate" this debt which was owing from the Debtor to Connell.[21] Connell advanced these funds for the Debtor's benefit, and the Debtor agreed to but did not repay this advance. This amount of the claim is due, owing, and payable and, therefore, is allowed.

The Bank has argued that this Agreement cannot be binding on the Debtor since no manager of Debtor, acting in that representative capacity—only Connell's parents—signed the Agreement on behalf of the Debtor. The capacity in which a party signs an agreement is a question of intent and this intent is to be determined from the language of the agreement and surrounding circumstances.[22] The parties' intent, on the question of the capacity in which they signed can be determined from the language of the Agreement and the uncontroverted testimony.

Connell testified that the Agreement was intended to bind the Debtor as well as the individuals who signed the document. The text of the Agreement references and makes the debtor a party thereto, a textual reference which makes no sense absent an understanding that the Debtor was a party to be bound by the Agreement.

The Agreement states that the Debtor was a party to the Agreement and the terms of the Agreement, show that the Debtor, not Connell's parents, primarily was the beneficiary of the duties which Connell undertook under the Agreement. The Court finds and concludes that Connell's parents signed the Agreement as representatives of the Debtor, despite not being expressly identified as such.

---

[21]     Utah Code Ann. § 48-2c-404 (2004).

[22]     *See, e.g.*, *W. W. & W. B. Gardner, Inc. v. Pappas*, 470 P.2d 252, 253 (Utah 1970); *O'Hair v. Kounalis*, 463 P.2d 799, 800 (Utah 1970); *Sugar v. Miller*, 315 P.2d 862, 864 (Utah 1957).

Even if the Agreement is binding on the Debtor, the Bank still challenges whether the $150,000 component of Connell's claim should be paid, maintaining that the Agreement contains a condition precedent to payment which was not satisfied. The condition which the Bank claims went unmet is a cash flow or debt service condition found at the bottom of page 2 of that document. Connell testified, however, that this condition in fact was met and the Bank did not rebut this testimony with evidence to the contrary. Connell also testified, without contradiction in the record, that in any event none of these conditions was intended by the parties to operate as absolute conditions to earning and receiving payment of the $150,000—that they in fact were interpreted and administered only as guidelines respecting the timing of payment of certain obligations for the benefit of the family insiders to the business. The conditional language relied upon by the Bank in this regard is subject to a supervening condition found in the text of the document—on page 3, paragraph 3—namely that all of the $150,000 becomes due and payable upon termination of the relationship between the Debtor and Connell. Connell testified that his relationship with the Debtor has terminated.

The language of the contract is controlling unless it is ambiguous, unclear, incomplete, or otherwise requires clarification under the Parol Evidence Rule.[23] When contract language may be unclear, the intent of the parties to the contract should be determined.[24] Intent is derived from the language of the instrument and from extrinsic evidence, such as testimony from a party to the document concerning the intended meaning.[25] The language of the Agreement, insofar as the

---

[23]  *See Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1955) (explaining Utah's Parol Evidence Rule).

[24]  *See id.*

[25]  *See id.* at 268–69.

$150,000 is concerned is relatively clear.  The $150,000 was to be earned, in $50,000 increments, by meeting three performance targets.  Each of those targets was met.  The Agreement contains some "conditions" on when the $50,000 installments were to be paid, but those conditions, read as a whole, do not seem to be conditions precedent or absolute conditions.  The Agreement uses the term "may," rather than "shall" in this regard, and, when all of the conditions are read as a whole, they appear to be more in the nature of regulatory guidelines than absolute conditions.  Connell's testimony that these were intended by members of the family business to be more or less "guidelines" rather than conditions, particularly given the informality with which this closely held family business was conducted, is persuasive.  Still, even if they are read as firm conditions, the evidence before the Court is that they were met, and, hence, the money became due and payable to Connell. The one absolute condition respecting termination of the relationship between Debtor and Connell did occur and therefore the $150,000 is due and payable.

-------------------------------------------END OF DOCUMENT-------------------------------------

_____ooo0ooo_____

**SERVICE LIST**

Service of the foregoing Findings of Fact and Conclusions of Law Respecting Bank of the West's Objection to Claim of Jed Connell and Order Allowing Claim will be effected through the Bankruptcy Noticing Center to the following parties,

Kim Wilson
Snow, Christensen & Martineau,
10 Exchange Place, Eleventh Floor
P. O. Box 45000
Salt Lake City, Utah 84145-5000

Alan L. Smith
1492 Kensington Avenue
Salt Lake City, UT  84105-2654

Duane H. Gillman
Kenneth L. Cannon
Durham Jones & Pinegar
111 East Broadway, Suite 900
Salt Lake City, UT  84111

Adam S. Affleck
Prince Yeates & Geldzahler
City Center 1
Suite 900
175 East 400 South
Salt Lake City, UT  84111

John T. Morgan
Peter J. Kuhn
US Trustee's Office
405 South Main Street, Suite 300
Salt Lake City, UT  84111

ORDER SIGNED